**In re REA EXPRESS, INC., Private Treble Damage Antitrust Litigation.**

**No. 115.**

Judicial Panel on Multidistrict Litigation.

Dec. 21, 1972.

Before ALFRED P. MURRAH*, Chairman, and JOHN MINOR WISDOM, EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER, JO- SEPH S. LORD, III, and STANLEY A. WEIGEL, Judges of the Panel.

## OPINION AND ORDER

PER CURIAM.

REA Express, Inc., an express common carrier, initiated an action in the Eastern District of Pennsylvania against more than 160 railroads under Sections 1 and 2 of the Sherman Act. Many of the defendant railroads objected to the venue of the action and to service of process. These objections were resolved by the transfer of the action against certain of the defendants to eight other districts. REA now seeks the transfer of those eight identical antitrust actions to the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings with the action pending there, pursuant to 28 U.S.C. § 1407.

REA also seeks transfer of two additional actions in which it is a defendant. The first is brought by the St. Louis-Southwestern Railway Co. in the Northern District of California, alleging that REA has failed to pay it for transportation of express traffic. The second action naming REA as a defendant is brought by the Seaboard Coast Line Railroad Co. in the Middle District of Florida, seeking recovery of sums allegedly due from REA for services rendered.

The defendant railroads agree on the desirability of transferring all actions, except the *Seaboard* action, to the Eastern District of Pennsylvania. We find that all actions, including the *Seaboard* action, share extensive common issues of fact and that their transfer to the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings will serve the convenience of the parties and witnesses and further the just and efficient conduct of the litigation.

In its antitrust actions REA alleges that the defendant railroads, including the St. Louis-Southwestern and the Seaboard Coast Line, combined and con-

* Judge Alfred P. Murrah took no part in the consideration or decision of this matter.

spired, from 1929 to the present, to avoid competition in furnishing transportation services to REA, to impose excessive charges for the use of their facilities and to prevent REA from competing with them or using other methods of transportation. The alleged conspiracy is said to have been a misuse of the defendants' monopoly power and an expansion of their monopoly into the express business.

One of the central questions common to all the antitrust cases is whether the railroads conspired to force REA to pay more than was required for transportation of trailers on flat cars (piggyback service). REA apparently asserts that, as a common carrier, it was not obligated to pay published ICC tariff rates for such service but could negotiate lower rates from the railroads. It alleges, however, that in 1967 the defendants, through their control of REA's stock, forced it to adopt a policy of paying ICC tariffs (Plan II½ and Plan III tariffs) for piggyback service from the defendants. The defendants deny these allegations. The need for coordinated pretrial proceedings in these antitrust cases is clearly established by these common issues of fact.

In the *St. Louis-Southwestern* case the plaintiff is seeking recovery for transportation services rendered REA pursuant to a regional master agreement which REA alleges to be part of the antitrust conspiracy. St. Louis-Southwestern has asserted the same claim as a counterclaim in REA's Pennsylvania antitrust suit. As the filing of the Pennsylvania counterclaim indicates, the *St. Louis-Southwestern* action arises from the same factual background as

the antitrust cases and should be assigned to the same judge for pretrial proceedings.

Seaboard, joined by the other railroads, urges that insufficient common questions of fact are raised by the second amended complaint in its Florida action to support pretrial coordination with the remaining actions.[1] It asserts that the Florida action was brought to recover for transportation services rendered REA in 1967 and 1968 and that the basis for this recovery is not the agreements between REA and the railroads attacked in the Pennsylvania action but a series of specific agreements between Seaboard and REA based on the ICC-approved tariff rates.

A review of the pleadings in this case leads to the opposite conclusion and makes clear the need to include it in coordinated pretrial proceedings. The first amended complaint of Seaboard in Florida specifically pleaded REA's 1967 policy in support of its claim for Plan II½ and III tariffs from REA for piggyback and related services. The second amended complaint has eliminated this reference and seeks recovery in three counts. The first count asserts that Seaboard is entitled to the tariffs on the basis of specific contracts formed by correspondence between REA and Seaboard. The second count asserts that, absent specific contracts, the ICC's Plan II½ and III rates were applicable to the piggyback service provided REA; and the third count seeks recovery of the tariff rates as reasonable value of these services.

REA's answer denies the existence of the alleged contracts and the applicability of the Plan II½ and III tariffs. As an affirmative defense it alleges that

---

1. At the hearing on this matter, Seaboard also urged that transfer would be premature because REA had not yet responded to its second amended complaint and no accurate evaluation could be made of the questions of fact common to the Florida and other actions. Since that time REA has filed an answer to the amended complaint and a counterclaim under the antitrust laws. Seaboard has filed an amended answer to portions of that counterclaim and several motions: one to strike certain affirmative defenses asserted by REA in its answer, one for a more definite statement of certain counts of the counterclaim and one to sever certain counts of the counterclaim for trial. The filing of these pleadings disposes of the prematurity argument.

any contracts were the result of the railroads' conspiracy to restrain competition in dealing with REA and to fix minimum prices for services to REA. Seaboard has moved to strike this defense. In its counterclaim REA makes allegations of conspiratorial conduct to restrain trade and to expand the railroads' monopoly, which are identical to the allegations in the antitrust actions discussed earlier. Seaboard denies these allegations in its answer and moves to sever this aspect of the counterclaim for trial, urging that the Florida court not exercise jurisdiction and suggesting it would have no objection to the transfer of the antitrust counterclaims to the Eastern District of Pennsylvania for pretrial proceedings.

Without expressing any views on the merits of Seaboard's motion for severance of REA's antitrust allegations for trial, we do not think the pretrial development of Seaboard's claims against REA may be so neatly disentangled from the pretrial development of REA's antitrust allegations. The factual background for both sets of claims is largely common. Although Seaboard no longer specifically relies on the 1967 tariff policy challenged in the REA antitrust suits, the transactions in question apparently occurred during the effective period of the policy and many of the documents and witnesses relevant to the antitrust suits will also be relevant to Seaboard's suit.[2] In view of the likelihood of duplicative discovery the Seaboard action must be transferred for coordinated or consolidated pretrial proceedings with the other cases.

It is therefore ordered that all actions on the attached Schedule A pending in other districts be, and the same hereby are, transferred to the Eastern District

of Pennsylvania and, with the consent of that court, assigned to the Honorable Edward Becker for coordinated or consolidated pretrial proceedings, pursuant to 28 U.S.C. § 1407, with the actions listed in Schedule A and pending in that district.

### SCHEDULE A

**Eastern District of Pennsylvania**

| | |
|---|---|
| REA Express, Inc., et al. v. | |
| Aberdeen & Rockfish R. R. | Civil Action No. |
| Co., et al. | 71–802 |

**Northern District of Georgia**

| | |
|---|---|
| REA Express, Inc., et al. v. | |
| Atlanta & West Point R. R. | Civil Action No. |
| Co., et al. | 16690 |

**Western District of Washington**

| | |
|---|---|
| REA Express, Inc., et al. v. | Civil Action No. |
| Camas Prairie R. R. Co. | 101–72C3 |

**District of Vermont**

| | |
|---|---|
| REA Express, Inc., et al. v. | Civil Action No. |
| Central Vermont Railway Co. | 6627 |

**District of Minnesota**

| | |
|---|---|
| REA Express, Inc., et al. v. | |
| Duluth, Winnipeg & Pacific | Civil Action No. |
| Railway Co. | 5–72 Civ. 56 |

**Eastern District of Wisconsin**

| | |
|---|---|
| REA Express, Inc., et al. v. | |
| Green Bay and Western Rail- | Civil Action No. |
| way Co. | 72–C–318 |

**Eastern District of Missouri**

| | |
|---|---|
| REA Express, Inc., et al. v. | Civil Action No. |
| Illinois Terminal R. R. Co. | 72C–335(3) |

**Western District of Michigan**

| | |
|---|---|
| REA Express, Inc., et al. v. | |
| Lake Superior & Ishpeming | Civil Action No. |
| R. R. Co. | M44–72CA |

**District of Maine**

| | |
|---|---|
| REA Express, Inc., et al. v. | Civil Action No. |
| Maine Central R. R. Co. | 13–80 |

**Northern District of California**

| | |
|---|---|
| St. Louis Southwestern Ry. Co. | Civil Action No. |
| v. REA Express, Inc. | C71–2030–ACW |

**Middle District of Florida**

| | |
|---|---|
| Seaboard Coast Line R. R. | Civil Action No. |
| Co. v. REA Express, Inc. | 70–937–Civ.–J |

2. Seaboard also suggests that transfer is inappropriate because its discovery is virtually completed, in spite of the recent filing of its amended complaint. It appears, however, that REA intends to depose the officials of Seaboard and other railroads and the remaining discovery should be coordinated with that in the other cases.